**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MARK T. FINN,
Plaintiff-Appellant,

v.                                                                    No. 94-2373

S. DAVID SCHILLER,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CA-94-743-R)

Argued: February 1, 1995

Decided: January 3, 1996

Before HALL and WILKINS, Circuit Judges, and
CHAPMAN, Senior Circuit Judge.

_____

Affirmed but remanded for further proceedings by published opinion.
Senior Judge Chapman wrote the opinion, in which Judge Hall and
Judge Wilkins joined.

_____

**COUNSEL**

**ARGUED:** Jed S. Rakoff, FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON, Washington, D.C., for Appellant. Robert William Jas-
pen, Assistant United States Attorney, Richmond, Virginia, for
Appellee. **ON BRIEF:** Harvey L. Pitt, Debra M. Torres, Karl A.
Groskaufmanis, Gregory J. Ikonen, James A. Hutchinson, FRIED,

FRANK, HARRIS, SHRIVER & JACOBSON, Washington, D.C.; Hunter W. Sims, Jr., L. Allan Parrott, Jr., KAUFMAN & CANOLES, P.C., Norfolk, Virginia, for Appellant. Helen F. Fahey, United States Attorney, Richmond, Virginia, for Appellee.

_____

## OPINION

CHAPMAN, Senior Circuit Judge:

Mark T. Finn filed suit in the United States District Court for the Eastern District of Virginia against S. David Schiller, Assistant United States Attorney, alleging an ongoing pattern of prosecutorial misconduct including violations of Federal Rule of Criminal Procedure 6(e)(2) and seeking injunctive relief so as to prevent Schiller from disclosing grand jury material. The district court determined that only criminal contempt of court is provided by the Rule and, therefore, that only the court or the United States Attorney may institute contempt proceedings thereunder. The district court dismissed the suit, and Finn appeals. For the reasons discussed below, we affirm the dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. However, we conclude that Rule 6(e)(2) provides both civil and criminal contempt but does not create a private cause of action. Accordingly, we remand for further proceedings consistent with this opinion.

I.

Finn served on the Virginia Retirement System ("VRS") Board of Trustees in the early 1990s. From May 1990 until August 1990, the VRS increased its stock ownership in the Richmond, Fredericksburg & Potomac Railroad Corporation through open-market purchases. After learning of these stock purchases, Schiller, an Assistant United States Attorney, commenced a grand jury inquiry into the VRS's actions to determine if there had been securities laws violations.

On September 19, 1994, Schiller filed a plea agreement and a three page criminal information charging Patrick Bynum with a federal mail fraud violation. The information did not mention Finn. On Sep-

2

tember 23, 1994, Schiller signed and filed an eighty-three page state-
ment (the "Statement") in the criminal proceeding against Bynum.
Only six pages of the Statement dealt with the guilty plea of Bynum,
and the remainder of the Statement generally alleged that Finn and
other VRS officials conspired to commit mail, wire, and securities
fraud in acquiring the railroad stock. Finn was mentioned by name
over 370 times in the Statement.

On September 30, 1994, at Bynum's arraignment, his counsel
informed the court that Bynum did not accept the Statement for sev-
eral reasons, including the fact that "the majority of the information
contained therein is not associated with Mr. Bynum." Schiller then
filed a one-and-one-half page stipulation of facts (the "Stipulation")
as the factual predicate for Bynum's plea.[1] When the court asked
Schiller why he filed both the Statement and the Stipulation, Schiller
responded that the Stipulation reflects "the essential elements for
today," while the Statement "is the government's proffer as to the
entire matter."

As a result of Schiller filing the Statement, Finn's picture appeared
on the front page of the Richmond Times Dispatch the next day under
the heading "Fraud Alleged in VRS Takeover of RF&P."[2] The
Washington Post featured a similar article the same day in its front
page headlines.[3] Articles referring to or quoting from the Statement
continued to appear in newspapers throughout October 1994.[4] The

_____

[1] Finn's name does not appear in the Stipulation.

[2] When Schiller filed the Statement, Bynum was the only person
charged, and the charges did not mention the VRS stock purchases.

[3] The Washington Post article discussed alleged violations of state and
federal law by three senior officials of VRS: Jacqueline Epps, Mark
Finn, and Glen Pond. The article cited the Statement as the source for the
information contained therein. The article quoted from the Statement that
all three officials "sought to enrich themselves financially, reputationally,
politically and obtain business benefits for their careers."

[4] A Richmond Times Dispatch article on September 27, 1994 stated that
the Statement implicated Finn. The same day, another article from the
same newspaper stated:

> Now the federal government has alleged that in a scheme to
> hide the VRS takeover of the RF&P, three former officials of the

3

last newspaper article appeared on October 12, 1994 and featured a picture of Finn with a caption under the picture that read: "The U.S. attorney . . . alleges that Mark T. Finn . . . , president of a Virginia Beach money-management firm and a former board member of the [VRS], plotted with a former board chairman to have the pension fund illegally take control of RF&P Corp." A magazine article in the December 1994 issue of Managed Derivatives incorrectly stated that "Mark Finn . . . pleaded guilty to charges of felony mail fraud."

Finn claims that the release of the Statement and the resulting media coverage have harmed his reputation and his business. On October 7, 1994, Finn filed suit alleging that because the Statement disclosed matters occurring before the grand jury, Schiller had violated Federal Rule of Criminal Procedure 6(e) and had violated his constitutional rights under the Fifth and Sixth Amendments. Finn sought both preliminary and permanent injunctions to enjoin Schiller from further violations of Rule 6(e) and from an ongoing pattern of prosecutorial misconduct. Also, Finn requested the district court to strike the Statement from the record in United States v. Bynum. Finally, Finn asked the court to poll the grand jurors to determine if they could continue deliberations in an unbiased manner. In response, Schiller filed a motion to dismiss.

The district court heard the motions on October 20, 1994 and noted that it had never seen a stipulation of facts, accompanying a plea, that accused individuals of criminal activity who were not included in the indictment. The court asked Schiller's counsel if the United States Attorney was "initiating some new technique of in terrorem tactics in the Eastern District of Virginia that is going to create a lot of stressors for district judges like myself?" However, the court concluded that without an indictment, Finn could not establish that the Statement

_____

VRS -- Jacqueline Epps, Mark Finn, and Glen Pond-- broke securities laws, mail- and wire-fraud laws, and state statutes concerning prohibitions against secret meetings, perjury, misuse of public funds, falsification of records, and more. The document is not an indictment, although federal prosecutors say they expect to file criminal charges.

The newspaper articles appearing throughout October continued to discuss the charges against Finn and the others.

4

prejudiced him and that the contempt of court remedy provided by Rule 6(e)(2) was limited to criminal contempt. The district court dismissed Finn's complaint, finding that it lacked jurisdiction over Finn's civil claims and that the complaint did not state a claim upon which relief could be granted. The judge indicated that Finn could file a motion to strike the Statement from the public record in United States v. Bynum. On October 27, 1994, Finn filed an application to intervene in Bynum for the limited purpose of moving to strike the Statement. On November 2, 1994, the government filed a motion seeking to withdraw the Statement from the Bynum record on the ground that the Stipulation rendered the Statement superfluous. Concurrently, the government moved to dismiss Finn's motion to strike as moot. On November 4, 1994, Finn responded to the government's motion to dismiss and claimed that because the Statement was filed for an improper purpose,[5] the district court should strike it from the record. On November 14, 1994, the district court granted Finn's motion to intervene, granted the government's motion to withdraw the Statement from the record, and found moot Finn's motion to strike. Finn appealed the district court's final order dismissing his suit.

II.

The following issues are presented for our review:

1. Has Finn stated a claim upon which relief can be granted under Federal Rule of Criminal Procedure 6(e) to enjoin violations of the Rule?

2. Does the district court have the authority under its inherent supervisory power over grand jury proceedings to entertain a suit by a private litigant seeking civil relief?

We review questions of law de novo. Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768-69 (4th Cir. 1991), cert. denied, 503 U.S. 984 (1992).

_____

[5] Finn claims that Schiller filed the Statement in an effort to pressure him into a plea agreement. Based on the record before us, this is certainly a reasonable conclusion.

5

III.

The central issue in this appeal is whether Federal Rule of Criminal Procedure 6(e) provides a civil remedy for its violation.[6] Rule 6(e)(2) provides:

> General Rule of Secrecy. A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.

At the heart of the present controversy is the last line of the Rule. We must decide whether this language creates a private cause of action -- that is, whether a private person who claims damage because of a violation of this general rule of grand jury secrecy may bring an action against a violator of the rule to enjoin such violation or any threatened future violations and seek sanctions for contempt. We con-

---

[6] Rule 6 was enacted in an effort to guard the secrecy of grand jury proceedings. The Supreme Court has consistently acknowledged the important interests that the secrecy requirements aim to protect.

> First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

Douglas Oil Co. v. Petrol Stops N.W., 441 U.S. 211, 219 (1979).

6

clude that Rule 6(e)(2) does not establish a private cause of action, but a person claiming damage as a result of a violation of the rule has the right to call such violation to the court's attention, and the court shall take action as hereinafter directed. Notice to the court may be by way of petition or by letter to the district judge. See Lance v. United States Dep't of Justice (In re Grand Jury Investigation), 610 F.2d 202, 209 (5th Cir. 1980).

Plaintiff argues that if the rule provides for civil contempt then it follows that a private cause of action may be maintained thereunder. Several courts have adopted this reasoning. E.g. , Lance, supra, 610 F.2d 202; Blalock v. United States, 844 F.2d 1546 (11th Cir. 1988); and Barry v. United States, 865 F.2d 1317 (D.C. Cir. 1989). Contra In re Grand Jury Investigation (90-3-2), 748 F. Supp. 1188 (E.D. Mich. 1990).

We find that the question of whether this rule of grand jury secrecy creates a private cause of action is not determined by the nature of the contempt provided therein. The rule does not modify contempt as being either civil or criminal or both.

In Gompers v. Buck's Stove & Range Co., 221 U.S. 418 (1911), the United States Supreme Court held:

> Contempts are neither wholly civil nor altogether criminal. And "it may not always be easy to classify a particular act as belonging to either one of these two classes. It may partake of the characteristics of both." But in either event, and whether the proceedings be civil or criminal, there must be an allegation that in contempt of court the defendant has disobeyed the order, and a prayer that he be attached and punished therefor. It is not the fact of punishment, but rather its character and purpose, that often serve to distinguish between the two classes of cases. If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court. It is true that punishment by imprisonment may be remedial as well as punitive, and many civil contempt proceedings have resulted not only in the imposition of a fine, payable to the

7

complainant, but also in committing the defendant to prison. But imprisonment for civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order which, either in form or substance, was mandatory in its character. Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do.

Id. at 441-42 (citations omitted).

Guided by this reasoning and by the fact that Rule 6 does not modify or qualify in any way the phrase "contempt of court", we conclude that the rule provides for both civil and criminal contempt.

If Plaintiff's allegations are true, both civil and criminal contempt may be required to afford complete relief. Plaintiff alleges a continuing pattern of prosecutorial misconduct that includes release of grand jury material in violation of Rule 6(e)(2). An injunction to stop further or future release of grand jury material would be remedial and civil in nature. However, Plaintiff also alleges that Defendant has already violated the rule by making public the eighty-three page Statement. If this were proved, a finding of criminal contempt would be proper as punishment for the past violation of the rule and to vindicate the authority of the court.

Although we find that the language of the rule provides both civil and criminal contempt, it does not follow that the rule creates a private cause of action. A claimant may notify the court of a violation of the rule or may petition the court to investigate an alleged violation, but such complainant may not proceed by way of a civil action against the alleged violator. "[T]here is no such thing as an independent cause of action for civil contempt." Blalock v. United States, 844 F.2d at 1550 (citing McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949); and Gompers v. Buck's Stove & Range Co., supra, 221 U.S. at 441-42).

The rule by its clear language does not indicate that there is a right of private enforcement, and we find that such a right may not be implied. "The federal judiciary will not engraft a remedy on a statute,

8

no matter how salutary, that Congress did not intend to provide." California v. Sierra Club, 451 U.S. 287, 297 (1981). This reluctance is more pronounced when one contemplates adding a remedy to a rule of court.

Even if it may be argued that a civil remedy under Rule 6(e)(2) would not be inconsistent with the congressional scheme, this is not sufficient to justify a court-created cause of action where Congress has not affirmatively indicated that it intended such. Federal Savings & Loan Ins. Corp. v. Reeves, 816 F.2d 130, 138 (4th Cir. 1987).

In Cort v. Ash, 422 U.S. 66 (1975), the Supreme Court established the preferred approach for determining whether a private right of action should be implied from a federal statute. The Court listed four factors to be considered:

> First, is the plaintiff "one of the class for whose especial benefit the statute was enacted," -- that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the states, so that it would be inappropriate to infer a cause of action based solely on federal law?

Id. at 78 (citations omitted).

Cases subsequent to Cort have explained that the ultimate issue is whether Congress intended to create a private right of action, Universities Research Ass'n, Inc. v. Coutu, 450 U.S. 754, 771-72 (1981); but the four factors specified in Cort remain the test to determine congressional intent. Davis v. Pasman, 442 U.S. 228, 241 (1979).

A consideration of the first two Cort factors is dispositive. The language of the rule does not suggest that Congress intended to create

9

a federal right for the special benefit of a class of persons; rather, the rule was established to protect the grand jury process and to codify "a practice the district courts had been following for eighty years." Blalock, 844 F.2d at 1556 (Tjoflat, J., specially concurring).

Under the second step of the analysis, there is no evidence that Congress anticipated that there would be a private remedy. Therefore, it is unnecessary to inquire further because factors three and four are only relevant "if the first two factors give indication of congressional intent to create the remedy." California v. Sierra Club, 451 U.S. at 298.

Our decision that Finn may not bring a private action under Rule 6 does not preclude the district court from granting relief. To the contrary, once an alleged Rule 6(e)(2) violation is brought to the court's attention, it is the district court's duty to investigate the matter and impose contempt sanctions when it finds a violation has occurred. Because the victim of a breach of grand jury secrecy cannot bring suit on his or her own behalf, the district court has an inherent duty to preserve the integrity of Rule 6 by instituting contempt proceedings when presented with a prima facie case of a violation. The United States Attorney has a similar duty to preserve the integrity of the Rule and to act promptly when he has information of a violation.[7]

At first glance, criminal contempt may appear to be a harsh remedy, but compromising grand jury secrecy is a serious matter. It can endanger the lives of witnesses and law enforcement officers and undermine the grand jury system. Courts must not tolerate violations of Rule 6(e) by anyone, especially United States Attorneys who, as alleged in this case, may do so in an effort to pressure a target into a plea agreement. Overzealous prosecutors must not be allowed to file sweeping statements of fact alleging violations of various laws by

_____

[7] In order to establish a prima facie case of a Rule 6(e) violation, the complainant must show that (1) information was knowingly disclosed about "matters occurring before the grand jury," and (2) the source of the information is a person subject to Rule 6(e). If the allegations contained in the eighty-three page Statement are "matters occurring before the grand jury," it would appear that a prima facie case is present, as Schiller is a person subject to the Rule.

10

unindicted individuals. A primary purpose of Rule 6 is to protect the unindicted, and the United States Attorney has a duty to protect the innocent as well as to prosecute those indicted by the grand jury.

The Rule is intended to protect grand jury secrecy, and one of the purposes of grand jury secrecy is to "assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule." Douglas Oil, 441 U.S. at 219. We hold that upon a prima facie showing to the district court of an alleged Rule 6(e) violation, the court must take appropriate steps to determine whether a violation has occurred. If the court finds that a violation has, in fact, occurred, the court should take appropriate action to prevent further violations and to sanction the violator as provided by the Rule.

IV.

Next, we turn to Finn's assertion that, independent of any statutory authority, the district court retains jurisdiction over his private action pursuant to the court's inherent supervisory power over grand jury proceedings.

Schiller maintains that the Fourth Circuit should decline to consider Finn's argument that the district court's inherent supervisory authority is a basis for jurisdiction, because Finn never pursued this issue in the district court. However, a review of the pleadings reveals that Finn cites, as a basis for jurisdiction, the "inherent authority of this court to supervise grand jury proceedings." In addition, Finn raised the issue in his brief in support of his petition to strike the Statement and to have the court interview the grand jurors to determine if they could continue deliberations in an unbiased manner. We find that Finn adequately presented the issue to the district court.

In United States v. Shaffer Equip. Co., 11 F.3d 450 (4th Cir. 1993), this court recognized:

> Due to the very nature of the court as an institution, it must and does have an inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates. This power is organic, without need of a statute or

11

rule for its definition, and it is necessary to the exercise of all other powers. Because the inherent power is not regulated by Congress or the people and is particularly subject to abuse, it must be exercised with the greatest restraint and caution, and then only to the extent necessary.

Id. at 461-62 (citations omitted). Additionally, in Chambers v. NASCO, Inc., 501 U.S. 32, 50 (1991), the Supreme Court noted that

> when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.

The district court's inherent supervisory power over grand jury proceedings is sufficient for it, upon proper proof, to impose either civil or criminal contempt sanctions because its inherent powers are not proscribed by Rule 6.**8** However, the court's supervisory power does not authorize a private cause of action because such power is vested in the court, and only the court may invoke it.

V.

Finally, we turn to Finn's assertion that the district court has jurisdiction over his complaint directly under the Fifth Amendment. Finn argues that the Due Process Clause of the Fifth Amendment guarantees that he will not be charged with criminal misconduct by a U. S. Attorney or by a grand jury absent a proper indictment, and he claims that the district court erred in dismissing his complaint for lack of subject matter jurisdiction because the district court has "original

_____

**8** Rule 6(e)(2) states in part,"No obligation of secrecy may be imposed on any person except in accordance with this rule." However, 18 U.S.C. § 401 gives the court authority to punish"misbehavior of any of its officers in their official transactions." The Assistant United States Attorney is an officer of the court, and if he did what has been alleged in the present case, it would certainly qualify as "misbehavior" and subject him to punishment under § 401.

12

jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331 (1988).

In response, Schiller asserts that Finn did not request relief based upon alleged due process violations, but rather limited his request for relief to alleged violations of Rule 6(e). Therefore, Schiller argues, we should not consider this jurisdictional claim because it was not raised below. Under a liberal reading of the complaint, one might find a constitutional question presented, and Finn did mention due process in his argument and in his brief before the district court, but the district judge did not mention this claim of jurisdiction in his ruling. Because this matter is being remanded, we will not consider the due process claim and allow the district court the opportunity to first consider it.

For the foregoing reasons, we find that the district court correctly dismissed Finn's complaint under Rule 12(b)(6) because neither Rule 6(e)(2) nor the district court's inherent power creates or provides a private cause of action for its enforcement. However, we find that the district court has a duty to protect the integrity of grand jury proceedings. Upon remand, the district court must investigate the matter to determine whether the information contained in the statement violates Rule 6(e)(2). If so, the court shall impose such sanctions as it may find appropriate. Additionally, the district court may, under its inherent power impose either civil or criminal contempt sanctions if it finds that sanctions under Rule 6(e)(2) are not appropriate. Also, the district court shall, on remand, consider Finn's claim of jurisdiction for denial of due process. Consequently, the district court's order is

AFFIRMED BUT REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

13