**UNITED STATES of America**

v.

**J. David SMITH, et al.**

**No. CRIM. A. 94–524 (NHP).**

United States District Court,
D. New Jersey.

Feb. 4, 1998.

Kimberly M. Guadagno, Assistant U.S. Attorney, Faith S. Hochberg, United States Attorney, Newark, NJ, for U.S.

Lawrence S. Lustberg, Mark A. Berman, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, Newark, NJ, for Defendant J. David Smith.

Kevin H. Marino, Newark, NJ, for Defendant Steven Dandrea.

David Povich, Barry S. Simon, Williams & Connolly, Washington, DC, for Intervenor GTECH.

Cathy Fleming, Fischbein, Badillo, Wagner & Harding, New York, NY, for Intervenor Uncharged Individual.

## LETTER OPINION

POLITAN, District Judge.

This opinion is a redacted version of a full opinion filed under seal in this matter. Those portions which were redacted are clearly noted by the Court.

This matter comes before the Court on a motion by defendant J. David Smith, GTECH Corporation, Smith's former employer, and an uncharged individual, for the institution of contempt proceedings and additional relief against the United States Attorney's Office based upon an alleged violation of Federal Rules of Criminal Procedure 6(e) and 32. Defendant Steven Dandrea has filed a motion only with respect to the Rule 32 issue. The Court has reviewed the papers submitted in support of and in opposition to the motion, and the parties have attended several conferences relating to the matter. Based upon the reasoning set forth more particularly below, the Court finds that Rule 6(e) was violated when the United States Attorney's Office disseminated the sentencing memorandum to the public by posting it on the Government's Internet web site and by mailing it to certain state lottery regulators. The Court also finds that Rule 32 was violated when the United States Attorney's Office made the sentencing memorandum public.

## STATEMENT OF FACTS

The catalyst of this matter was the conviction of defendants Smith and Dandrea by a jury on October 4, 1996, of all counts of a twenty-one-count indictment charging a kickback scheme involving the hiring by Smith of Dandrea as a consultant to GTECH, the vendor for the New Jersey State Lottery.

Sentencing was scheduled for January 8, 1997,[1] and the Assistant United States Attorney ("AUSA") in charge of the case met with the United States Probation Office to provide it with the Government's version of the offense conduct. In early January 1997, a sentencing expert hired by the defendants contacted the Probation Office to inform the office that new counsel for the defendants had not yet been retained. He further requested that any meeting with defendant Smith be delayed until new counsel was retained.

Regardless, the AUSA proceeded with her obligations under the Sentencing Guidelines, and informed the Court that the sentencing could not go forward on January 8, 1997, and the date was adjourned. New counsel for the defendants contacted the AUSA on January 14, 1997, to request an adjournment of the motion schedule until February 28, 1997, to allow counsel to review the record. The AUSA agreed to the request.

On that date, the AUSA informed Smith's new counsel that the sentencing memorandum of the United States Attorney's Office would be filed the next day. On January 15, 1997, the United States Attorney's Office filed with the Clerk's Office a Memorandum in Support of Sentencing. The memorandum was posted on the Internet web site maintained by the United States Attorney's Office and was distributed to members of the press, the public, and state lottery regulators. This dissemination is the genesis of this application.

In the days following the disclosure of the sentencing memorandum, newspaper articles outlining the allegations in the memorandum appeared in several newspapers in Texas. These newspapers reported that defendant Smith had received kickbacks, similar to those for which Smith was convicted, from uncharged individuals. The articles state that these allegations were made in the sentencing memorandum. There were also quotes in several of the articles from the AUSA in charge of the case.

Smith, Dandrea, GTECH, and the uncharged individual complained to this Court, contending that the memorandum contained grand jury material and asserting that the AUSA and the United States Attorney's Office had violated Rule 6(e) by disclosing it to the public. They also maintained that by making the memorandum public, the United States Attorney's Office violated Rule 32. This Court sealed the memorandum on the ground that Rule 6(e) material was implicated, ordered the United States Attorney's Office to remove it from the Internet, and ordered the AUSA to retrieve those copies of the memorandum that she had disseminated. This Court also ordered the parties to file, under seal, briefs concerning the extent to which the sentencing memorandum contained secret grand jury material.[2]

The Court will first determine whether the AUSA violated Rule 32 and/or this Court's Standing Order on sentencing. Then, the Court will determine whether the AUSA violated Rule 6(e) by including certain material in the sentencing memorandum. Finally, the Court must, if necessary, craft an appropriate sanction.

### DISCUSSION

As an initial observation, the United States Attorney's Office has sought in this matter to rewrite Rule 6 and Rule 32 by totally disregarding the serious issues of confidentiality and grand jury secrecy clear on the face of both rules. It is indeed distressing to this Court to see an obvious effort by the United States Attorney's Office to seek publicity and trial by newspaper in matters where basic fundamental rights (of parties and nonparties) are involved. Those rights, under the rules, are clearly subject to the power and

---

**1.** Defendants' posttrial briefs were due to be filed on January 31, 1997, by Court order. After new counsel were retained, the date for submission was extended to February 28, 1997.

**2.** Several newspapers filed a motion to intervene for the purpose of access to the papers and proceedings. This Court denied such access to any papers or hearings until such time as it made its determination as to whether the Government had violated Rule 6(e). The newspapers appealed, and the United States Court of Appeal for the Third Circuit affirmed this Court's ruling. *United ed States v. J. David Smith et al.,* 123 F.3d 140 (3d Cir.1997).

discretion of the Court, which is clothed with the responsibility of ensuring that the sensitive issues of confidentiality inherent in both Rule 6 and Rule 32 are respected and balanced against other considerations. This is a judicial function, not a prosecutorial function. The decision is always with the Court.

### Rule 32 [3]

The preparation of presentence reports ("PSRs") [4] are governed by Rule 32(b). This rule provides in pertinent part:

(b) Presentence Investigation and Report.

(1) When Made. The probation officer must make a presentence investigation and submit a report to the court before the sentence is imposed, unless:

(A) the court finds that the information in the record enables it to exercise its sentencing authority meaningfully under 18 U.S.C. § 3553; and

(B) the court explains this finding on the record.

\* \* \* \* \* \*

(3) Nondisclosure. The report must not be submitted to the court or its contents disclosed to anyone unless the defendant has consented in writing, has pleaded guilty or nolo contendere, or has been found guilty.

(4) Contents of the Presentence Report. The presentence report must contain—

(A) information about the defendant's history and characteristics, including any prior criminal record, financial condition, and any circumstances that, because they affect the defendant's behavior, may be helpful in imposing sentence or in correctional treatment;

\* \* \* \* \* \*

(5) Exclusions. The presentence report must exclude:

(A) any diagnostic opinions that, if disclosed, might seriously disrupt a program of rehabilitation;

(B) sources of information obtained upon a promise of confidentiality; or

(C) any other information that, if disclosed, might result in harm, physical or otherwise, to the defendant or other persons.

(6) Disclosure and Objections.

(A) Not less than 35 days before the sentencing hearing—unless the defendant waives this minimum period—the probation officer must furnish the presentence report to the defendant, the defendant's counsel, and the attorney for the Government. The court may, by local rule or in individual cases, direct that the probation officer not disclose the probation officer's recommendation, if any, on the sentence.

(B) Within 14 days after receiving the presentence report, the parties shall communicate in writing to the probation officer, and to each other, any objections to any material information, sentencing classifications, sentencing guideline ranges, and policy statements contained in or omitted from the presentence report. After receiving objections, the probation officer may meet with the defendant, the defendant's counsel, and the attorney for the Government to discuss those objections. The probation officer may also conduct a further investigation and revise the presentence report as appropriate.

(C) Not later than 7 days before the sentencing hearing, the probation officer must submit the presentence report to the court, together with an addendum setting forth any unresolved objections, the grounds for those objections, and the probation officer's comments on the objections. At the same time, the probation officer must furnish the revisions of the presentence report and the addendum to the defendant, the defendant's counsel, and the attorney for the Government.

---

**3.** The Government submitted an opinion letter and related materials that it solicited from the Administrative Office of the United States Courts ("AOC") regarding Rule 32. The Court did not consider this submission.

**4.** Presentence reports are documents prepared by a Probation Officer for use by the district judge prior to and at the court's sentencing of a defendant.

(D) Except for any unresolved objection under subdivision (b)(6)(B), the court may, at the hearing, accept the presentence report as its findings of fact. For good cause shown, the court may allow a new objection to be raised at any time before imposing sentence.

Fed.R.Crim.P. 32(b).

The report generally contains information gleaned from sources including the defendant, the defendant's family, law enforcement agencies, employers, and others who are acquainted with the defendant.

Frequently information disclosed to probation officers during the presentence investigation is given to the investigators in confidence. For example, a defendant may disclose his income but not wish to have those figures made public. A psychiatrist may provide an evaluation whose availability would best be restricted to the court and those involved in the defendant's rehabilitation. Law enforcement agencies frequently wish to protect the sources of information in their records and will sometimes exact a promise of confidentiality from the probation officer.

*United States v. Charmer Indus.*, 711 F.2d 1164, 1171 (2d Cir.1983). The Fifth Circuit recently articulated three compelling reasons underlying the need for confidentiality of a PSR:

First, the defendant has a privacy interest in the presentence report because it reveals not only details of the offense but, in the broadest terms, "any other information that may aid the court in sentencing...." A PSIR [presentence report] routinely describes the defendant's health, family ties, education, financial status, mental and emotional condition, prior criminal history and uncharged crimes. That the defendant has pled guilty or been convicted of a crime does not require the dissemination of his entire personal background in the public domain. And despite the care with which they are prepared, PSIR's do not conform to the rules of evidence and may contain errors.

\* \* \* \* \* \*

Second, as a repository of investigatory evidence about the defendant's involvement in criminal activity, the PSIR often relies upon confidential informants or sources or information and may include facts obtained from proceedings before the grand jury, which are otherwise secret. Were the confidentiality of presentence reports to be freely or regularly breached, the government's access to information needed for criminal investigation would be severely compromised. Third, relevant to the sentencing process alone, the court depends heavily upon the PSIR to fulfill the mandate of the Sentencing Guidelines and impose a just sentence. Disclosure of such reports to the public may stifle or discourage that vital transmission of information by the defendants, whose contribution to a PSIR is significant, and by cooperating third parties.

*United States v. Huckaby*, 43 F.3d 135, 138 (5th Cir.1995).

Rule 32 is silent on the question as to whether, and under what circumstances, a PSR might be disclosed to third persons. For the reasons outlined above and others, however, most courts have determined that PSRs should be held confidential and that third parties should not be granted access to the PSRs of another person. *See United States Dept. of Justice v. Julian*, 486 U.S. 1, 12, 108 S.Ct. 1606, 100 L.Ed.2d 1 (1988); *United States v. Cianscewski*, 894 F.2d 74, 79 n. 17 (3d Cir.1990); *United States v. Blanco*, 884 F.2d 1577, 1578 (3d Cir.1989); *Huckaby*, 43 F.3d at 137–38; *United States v. Corbitt*, 879 F.2d 224, 228 (7th Cir.1989); *United States v. Schlette*, 842 F.2d 1574, 1579 (9th Cir.1988); *United States v. McKnight*, 771 F.2d 388, 390 (8th Cir.1985), *cert. denied*, 475 U.S. 1014, 106 S.Ct. 1194, 89 L.Ed.2d 309 (1986); *United States v. Santarelli*, 729 F.2d 1388, 1390 (11th Cir.1984); *Charmer*, 711 F.2d at 1176.

Several courts have permitted a third party to gain access to a PSR in cases where the third party could demonstrate that disclosure will "serve the ends of justice," *Schlette*, 842 F.2d at 1579, or by establishing a "compelling, particularized need for disclosure." *Huckaby*, 43 F.3d at 138. Applying

this standard requires a "fact specific inquiry in which the need for confidentiality is balanced against the desirability of releasing a presentence report." *United States v. Preate,* 927 F.Supp. 163, 166–67 (M.D.Pa. 1996). This determination is committed to the sound discretion of the trial court. *Huckaby,* 43 F.3d at 138.

■ Presentence reports are not public records; they are confidential reports to the trial judge for his or her use in arriving at a fair sentence. Requiring disclosure of the report to third parties is "contrary to the public interest as it may adversely affect the sentencing court's ability to obtain data on a confidential basis from the accused, and from sources independent of the accused, for use in the sentencing process." *United States v. Martinello,* 556 F.2d 1215, 1216 (5th Cir. 1977).

■ At issue in the matter *sub judice* is not a presentence report, but a sentencing memorandum submitted by the United States Attorney's Office before the presentence report was prepared by the Probation Officer.[5] There is no reason to differentiate between damning information in a PSR and the same information contained in an allegedly "public" document. As the Court will explain more fully below, the actions of the United States Attorney's Office in filing and making public the sentencing memorandum constitute a flagrant attempt to circumvent the clearly established confidentiality provisions of Rule 32. To allow the United States Attorney's Office to get around the Rule 32 confidentiality provision by putting damaging material (as to the defendant and third parties) in a sentencing memorandum defies common sense and, in effect, allows the Government to be the judge with respect to whether a compelling need for disclosure exists. In effect, such action renders Rule 32 a nullity.

Rule 32 specifically exempts from the PSR any information that "if disclosed, might result in harm, physical or otherwise, to the defendant or other persons." Sentencing memoranda will, in most if not all cases, include the same types of sensitive or confidential information as are in the PSR, including criminal history and characteristics and, often, allegations of criminal conduct against uncharged individuals. This is one of the compelling reasons the Standing Order, discussed below, sets forth the timing of the submission to the Court of the PSR and the sentencing memoranda, if any.

Indeed, the Court is constrained to note that in most cases, sentencing memoranda are not even prepared. The PSR is often the only document prepared and provided to the court for use in sentencing. Any objections of the parties are contained therein. It is usually only in those cases that are complex or high profile that there will be memoranda provided to the Court.

As a matter of practice, courts do not shoot from the hip. In complex or high-profile cases, the court would undoubtedly hold a conference after preparation of the PSR to discuss with the parties issues which would require full hearing, such as relevant conduct, other criminal conduct, or other special concerns raised by the parties in their objections to the PSR. Based upon the conference, the court can set a schedule and a procedure to follow to ensure compliance with the relevant rules.

Within this framework, it should be the Court's determination as to whether there exists a compelling need for disclosure or whether disclosure will serve the ends of justice. This is especially true where a sentencing memorandum contains allegations implying that third persons engaged in criminal activities with the defendant, when such allegations were never touched upon at trial.[6]

The United States Attorney's Office makes the argument that the material in the sentencing memorandum was brought to the attention of the Court for use in sentencing.

---

5. Defendants and the third parties also make an argument that the Government's early preparation and filing of the sentencing memorandum ran afoul of this Court's Standing Order. This will be addressed *infra.*

6. The Court is of course putting aside for the moment that the sentencing memorandum contained 6(e) material, discussed *infra.* This discussion is focused on the harmful effect of certain statements in the memorandum.

However, where confidential information or information which might cause harm to a third person is "necessary" to bring to the Court's attention, such a reference could be made by pointing to the relevant portion of the PSR, which remains confidential, or filing such confidential information in a sealed document. This is also the way in which courts protect the information in the PSR at sentencing.[7]

A Standing Order of this Court, captioned "In re Guideline Sentencing," clearly contemplates the preparation of sentencing memoranda after the preparation of the PSR. The Standing Order provides that "the government, and counsel for the defendant(s) shall submit their sentencing memoranda, if any, to the court, to the probation officer and to each other." The Standing Order says nothing about filing the memoranda with the Clerk's Office, nor does it say anything about public access.[8] This allows the Court to have control over the information contained in the memoranda and in the PSR and to protect any information that might be revealed at sentencing by making appropriate references to sections of the PSR without restating them in open court. The Court lost control of the memorandum in this matter when the United States Attorney's Office unilaterally determined that it would disseminate it to reporters and post it on its Internet web site.

■ Merely because there is no specific, black letter restriction on doing some act does not mandate that doing the act is correct. And just because the United States Attorney's Office contends that numerous sentencing memoranda have been "filed" in this District does not make it correct either. The parties are entitled to use a sentencing memorandum to refute, correct, or otherwise comment on material contained in a PSR. The sentencing memorandum is in aid of the PSR and in further explication of the parties' positions as stated in the PSR. Sentencing memoranda are perforce part of and an appendage to the PSR, subject to the rules governing PSRs, particularly Rule 32.

■ In this matter, the United States Attorney's Office used the memorandum to accuse unindicted individuals of having committed crimes and to disclose business relationships previously unaddressed in the Smith trial. This is what Rule 32 (and Rule 6(e)) was meant to prohibit. Sentencing memoranda should *not* be filed in the Clerk's Office, should *not* be filed on the Internet, and should *not* be disclosed to the public in any way until they are submitted to the Court and the Court makes a determination as to whether disclosure is necessary or appropriate. The Court will not attempt to enjoin the practice. However, the Court will refer the issue to the Board of Judges to examine and determine whether a new Local Criminal Rule is warranted to halt the practice of disseminating in any way any presentence material without the express authorization of a judge of this court.

■ Additionally, the sentencing memorandum is not to be submitted until after the PSR is completed, a sequence that is illustrated in the Standing Order. The Court finds it inappropriate that the United States Attorney's Office sometimes deigns to accelerate the process by submitting the sentencing memorandum in advance of the PSR. The Court makes no comment as to the early *preparation* of the PSR, but deals only with its *submission*. Sometimes haste makes waste. In any event, the procedure set forth in the applicable Rules must be followed. The Court suggests that the United States Attorney's Office formulate internal guidelines so that the office will not run afoul of Rule 32 or the Standing Order in the future.

■ As a result of this Court's finding that the United States Attorney's Office vio-

---

7. The Second Circuit saw a clear analogy between sentencing memoranda and PSRs, stating that similar treatment of the two, in the context of grand jury information, would "reflect an appropriate balancing of the limited need for disclosure and the societal interest in grand jury secrecy." *United States v. Alexander*, 860 F.2d 508, 514 (2d Cir.1988).

8. The Clerk's Office, when it receives a sentencing memorandum, stamps the document "Filed" and immediately sends it to Chambers. The Clerk's Office does not place the sentencing memorandum in the "public" file.

lated Rule 32, the Court orders that the sentencing memorandum in this matter be stricken. This will, in effect, wipe the slate clean. After the parties have met with the probation office and the PSR is completed, the Court will hold a conference to have the parties identify the relevant issues with respect to confidential matters and such other issues the parties deem relevant. The Court will address them at that point and set a schedule for further submissions and hearings, if necessary.

### Rule 6(e)

In any discussion regarding the grand jury, a court must not overlook the fact that grand jury secrecy is to be preserved. *See Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979); *In re Grand Jury Matter (Catania)*, 682 F.2d 61, 63 (3d Cir.1982). Grand jury secrecy is a necessary ingredient in the proper function of the grand jury system. One of the functions of this secrecy is to assure that "persons who are accused but exonerated by the grand jury will not be held up to public ridicule." *Douglas Oil*, 441 U.S. at 219. This interest in secrecy is not eliminated merely because a grand jury has ended its activities. *Id.* at 222.

Rule 6(e) is intended to preserve this grand jury secrecy by providing for the confidentiality of all matters occurring before the grand jury. Rule 6(e) applies to "anything which may reveal what occurred before the grand jury." *Catania*, 682 F.2d at 63. Any knowing violation of Rule 6(e) may be punished by contempt of court.

> Rule 6(e) provides, in pertinent part, that: [A]n attorney for the government ... shall not disclose matters occurring before the grand jury, except as otherwise provided in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.

Fed.R.Crim.P. 6(e)(2).

As with any rule, there are certain narrow exceptions to the confidentiality requirement of Rule 6(e). Under Rule 6(e)(3)(A), grand jury secrets may be disclosed without a court order to an attorney for the government or to certain governmental personnel for purposes limited to federal criminal law enforcement. When such a disclosure is made, however, an:

> attorney for the government shall promptly provide the district court, before which was impaneled the grand jury whose material has been so disclosed, with the names of the persons to whom such disclosure was made, and shall certify that the attorney has advised such persons of their obligation of secrecy under this rule.

Fed.R.Crim.P. 6(e)(3)(B).

Additionally, disclosure of Rule 6(e) matters may also be made:

> (i) when so directed by a court preliminarily to or in connection with a judicial proceeding;
>
> (ii) when permitted by a court at the request of the defendant . . . .;
>
> (iii) when the disclosure is made by an attorney for the government to another federal grand jury;

Fed.R.Crim.P. 6(e)(3)(C).

 A party seeking to institute contempt proceedings for a violation of Rule 6(e) is required to establish a prima facie case by showing that "(1) the information was knowingly disclosed about 'matters occurring before a grand jury,' and (2) the source of the information is a person subject to Rule 6(e)." *Finn v. Schiller*, 72 F.3d 1182, 1189 n. 7 (4th Cir.1996). When presented with such a prima facie case, the court "must take appropriate steps to determine whether a violation has occurred." *Id.* at 1189.

 The Court should also note that GTECH and the uncharged individual have standing to participate and be heard in this matter. A court has the discretion "to afford any and all persons potentially affected by the disclosure of grand jury materials a reasonable opportunity to appear and be heard." *Gluck v. United States*, 771 F.2d 750, 755 (3d Cir.1985). The sentencing memorandum contains materials that directly relate to the conduct of the third parties. The potential effect to their reputations is enough to confer standing upon them. *See United States v.*

*RMI Co.*, 599 F.2d 1183, 1188 (3d Cir.1979) (stating that a third party whose "reliance interest in secrecy may be undermined should have standing to be heard in objection to disclosure").

For ease of reference, the Court will set forth the relevant facts with regard to each of the individual movants, as well as the allegations they have with regard to the actions they feel were violative of Rule 6(e).[9]

[This portion of the opinion was redacted, as it discusses Rule 6(e) material.]

## A. The Government's Sentencing Memorandum

[This portion of the decision was redacted, as it discusses Rule 6(e) material.]

**Disclosures to the Press**

The sentencing memorandum, as noted *supra*, was made available on the Internet web page maintained by the United States Attorney's Office and in hard copy to the public. Several newspaper articles reflect the contents of the memorandum with respect to the uncharged individual. These articles reference the grand jury investigation and New Jersey AUSAs' roles in the investigation.

For instance, the AUSA in charge of the case is quoted in a front-page story in the Austin–American Statesman, where she is described as sharing her findings "with federal prosecutors in Texas looking into lottery-related matters." The article goes on to quote the AUSA as saying that "New Jersey is coordinating with Texas" and that it would be irresponsible for her "to throw out a document like this without letting Texas know about it." The article quotes Harriet Miers, the Texas Lottery Commission Chairperson, as saying the Commission would review the memorandum to see what significance it had for the Texas lottery.

When questioned by this Court at a January 17, 1997 hearing, the AUSA admitted that the reporter for the Austin–American Statesman physically picked up a copy of the memorandum. Perhaps it was fortuitous that the Texas reporter was in Newark on

the day in question; however, the Court is concerned that the reporter was notified to be in Newark on this particular day to pick up the memorandum.

[This portion of the opinion has been redacted, as it discusses Rule 6(e) material.]

## RESPONSES BY UNITED STATES ATTORNEY'S OFFICE

The United States Attorney's Office contends that nothing in the memorandum is subject to the secrecy provisions of Rule 6(e). The United States Attorney's Office maintains that any [Rule 6(e) material disclosed] did not disclose what was occurring before the grand jury. Although it is the Court's independent recollection that the AUSA stated at a conference in chambers that the memorandum did contain 6(e) material, the AUSA maintains that she did not so state. Rather than engaging in a freewheeling determination as to which recollection is correct, the Court will look to the memorandum and make its own determination.

## ANALYSIS

The cardinal determination that this Court must make is whether the sentencing memorandum contains materials that should have been protected under Rule 6(e).

[This portion of the opinion has been redacted, as it discusses Rule 6(e) material.]

Because the Court would be unable to decide this case in a vacuum, the United States Attorney's Office was ordered to turn over the grand jury transcripts to this Court for an *in camera* review.

Based upon a review of the grand jury transcripts, the Court must come to the unfortunate conclusion that the United States Attorney's Office did disclose materials that are protected by Rule 6(e), despite strident protestations to the contrary.

[This portion of the opinion has been redacted, as it refers to Rule 6(e) material.]

To establish a prima facie case of violation of Rule 6(e), a movant must show that "(1) the information was knowingly disclosed

9. Because defendant Smith's allegations with respect to the alleged 6(e) violation are merely those made by GTECH and the uncharged individual, the Court will not reiterate Smith's position.

about 'matters occurring before a grand jury,' and (2) the source of the information is a person subject to Rule 6(e)." *Finn v. Schiller,* 72 F.3d 1182, 1189 n. 7 (4th Cir. 1996).[10] When presented with such a prima facie case, the court "must take appropriate steps to determine whether a violation has occurred." *Id.* at 1189. Here, the Court has determined that the memorandum included material that comes within the protection of Rule 6(e). Additionally, it is undisputed that an AUSA is a person subject to Rule 6(e). *See Finn v. Schiller,* 72 F.3d 1182, 1189 (4th Cir.1996).

· The Court must now determine whether any of the dissemination of the material by the United States Attorney's Office violated the rule. The Court will address those allegations made by the uncharged individual and GTECH as to the disclosures. However, based upon what this Court has read and heard from the parties, it will also require the AUSA and any other AUSA who had contact with third parties regarding the information in the memorandum to provide to this Court an affidavit under oath with respect to the recipients of any information, any letters accompanying the information, and the substance of the information provided, whether oral or written.

[This portion of the opinion is redacted, as it discusses Rule 6(e) material.]

*The Sentencing Memorandum*

■ The inclusion of Rule 6(e) material in the sentencing memorandum without leave of this Court is a violation of Rule 6(e). Disclosure of Rule 6(e) matters may be made "when so directed by a court preliminarily to or in connection with a judicial proceeding." Clearly, sentencing is encompassed within the ambit of a judicial proceeding.

■ Additionally, the Court is aware that not every document presented in response to a grand jury subpoena becomes a matter occurring before the grand jury. Rule 6(e) does not prevent disclosure of all documents subpoenaed by a grand jury. *See In re Grand Jury Investigation,* 630 F.2d 996, 1000 (3d Cir.1980), *cert. denied,* 449 U.S. 1081, 101 S.Ct. 865, 66 L.Ed.2d 805 (1981). Even the mere fact that a document is reviewed by a grand jury does not convert it into a matter occurring before the grand jury as contemplated by Rule 6(e). *Id.*

■ A matter occurring before the grand jury includes the "'essence of what takes place in the jury room, in order to preserve the freedom and integrity of the deliberative process.'" *United States v. Smith,* 787 F.2d 111, 115 (3d Cir.1986) (quoting *Grand Jury Investigation,* 630 F.2d at 1000).

As found by the Court above, the United States Attorney's Office did disclose materials that are protected by Rule 6(e). [This portion of the opinion is redacted, as it references Rule 6(e) material.]

**a. Internet Posting and Copies to Reporters**

■ The sentencing memorandum, as noted *supra,* was made available on the Internet web page maintained by the United States Attorney's Office and in hard copy to the public. Several newspaper articles reflect the contents of the memorandum with respect to the uncharged individual. These articles reference the grand jury investigation and New Jersey AUSAs' roles in the investigation.

Because such a public dissemination does not fall into any of the categories of exceptions to Rule 6(e), the Court finds that this action was a clear violation of Rule 6(e). Though the United States Attorney's Office argues that Local Civil Rule 79.2 requires that the public be given access to the document, this argument totally fails when Rule 6(e) material is implicated and with respect to sentencing memoranda with confidential information.

---

**10.** Many of the cases cited in the papers submitted in support and opposition to this motion relate to cases where application was made to a district court to have 6(e) material disclosed. Here, the United States Attorney usurped this Court's role and puts the Court into the uncomfortable position of acting as a "Monday morning quarterback." Rather than making the determination from the beginning, the Court now must figure out the "shoulda, coulda, and woulda" of disclosure.

The AUSA is quoted in several news stories, where she is described, for example, as sharing her findings "with federal prosecutors in Texas looking into lottery-related matters." The AUSA is also quoted as saying that "New Jersey is coordinating with Texas" and that it would be irresponsible for her "to throw out a document like this without letting Texas know about it."

The AUSA admitted that the reporter for the Austin–American Statesman physically picked up a copy of the memorandum. The Court is concerned that the reporter was notified to be in Newark on this particular day to pick up the memorandum. Coupled with the fact that the AUSA apparently offered interviews to several newspapers, the Court will require an affidavit under oath from the AUSA revealing any person or organization with whom she spoke in connection with the sentencing memorandum and the substance and content of those conversations.

### b. Disclosures to State Regulators

The AUSA conceded at the January 17, 1997 hearing that she transmitted the memorandum to certain state lottery regulators who had asked for the document. The AUSA also informed the Court that she had letters that she wrote to the regulators at the time she sent the memorandum. This is, perhaps, the most distressing of all the disseminations.

Rule 6(e) allows grand jury matters to be disclosed without a court order to an attorney for the government or to certain governmental personnel for purposes limited to federal criminal law enforcement. There is no evidence that state lottery regulators are involved in federal criminal law enforcement and, even if they were, the United States Attorney's Office failed to provide this Court with the names of the regulators to whom the information was divulged.

The Court cannot find words strong enough to express its concern with the way in which the United States Attorney's Office went about its preparation and ultimate dissemination of the sentencing memorandum.

GTECH was not on trial with Smith and Dandrea, nor was the uncharged individual. Yet, the innuendoes and implications in the memorandum directly impact on the business of both GTECH and the uncharged individual, leaving them as if they were "just as defenseless as the medieval prisoner and the victim of the lynch mob." *United States v. Briggs,* 514 F.2d 794, 803 (5th Cir.1975).

If the United States Attorney's Office had even a moment's hesitation about whether the memorandum contained Rule 6(e) material, the proper forum in which to bring that concern was before this Court. The Court rejects outright the argument by the United States Attorney's Office that public disclosure was appropriate because grand jury materials can be utilized for sentencing purposes. Rule 6 contains no such blanket permission, and there is "no need for the government to place grand jury materials in the open record in connection with such proceedings." *Alexander,* 860 F.2d at 514. The *Alexander* court aptly stated:

> [W]e see no reason why the government cannot state its sentencing position in open court in terms that do not reveal matters that occurred before the grand jury, furnishing the supporting grand jury material to the court in a sealed filing. This would parallel the treatment given to presentence reports prepared by the federal probation office.

*Id.*

Contempt sanctions are severe, and there are several options available to the Court in this matter other than ordering the AUSA to show cause why she should not be held in contempt.[11]

The Court will enjoin the United States Attorney's Office from disseminating any grand jury material in this case in the future without the express permission of this Court. Furthermore, if the United States Attorney's Office finds it necessary to include grand jury material in the sentencing memorandum, application shall be made to this Court for a determination as to the material's applicability to sentencing as required by Rule 6.

---

**11.** Rule 6(e) provides that a violation of Rule 6 *may* be punished as a contempt of court.

Additionally, the United States Attorney's Office is ordered to issue a letter of apology—to be approved by this Court—to both GTECH and the uncharged individual for its wrongful disclosure of the 6(e) material, with such letter to be posted on the Internet web site maintained by the United States Attorney's Office. Additionally, the United States Attorney's Office shall send a letter to all of those individuals or organizations to whom a copy of the memorandum was provided, including but not limited to the state lottery regulators to whom the memorandum was sent. That letter shall inform the recipient that the United States Attorney's Office violated Rule 6(e) and that the information provided to the recipient was confidential and should not have been so revealed.

The words of the court in *Finn v. Schiller* are hauntingly appropriate in this matter:

> [C]ompromising grand jury secrecy is a serious matter. It can endanger the lives of witnesses and law enforcement officers and undermine the grand jury system. Courts must not tolerate violations of Rule 6(e) by anyone, especially United States Attorneys .... Overzealous prosecutors must not be allowed to file sweeping statements of fact alleging violations of various laws by unindicted individuals. A primary purpose of Rule 6 is to protect the unindicted, and the United States Attorney has a duty to protect the innocent as well as to prosecute those indicted by the grand jury.

*Finn,* 72 F.3d at 1189.

An appropriate Order accompanies this Letter Opinion.

### ORDER

This matter having come before the Court on a motion by defendant J. David Smith, GTECH Corporation, and an uncharged individual for the institution of contempt proceedings and additional relief against the United States Attorney's Office based upon an alleged violation of Federal Rules of Criminal Procedure 6(e) and 32; and the Court having reviewed the papers submitted in this matter; and the parties having attended several conferences relating to the matter; and based upon the reasoning set forth more particularly in the accompanying Letter Opinion; and the Court having found that Rule 6(e) was violated when the United States Attorney's Office disseminated the sentencing memorandum to the public by posting it on the Government's Internet web site and by mailing it to certain state lottery regulators; and the Court having found that the Rule 32 was violated when the United States Attorney's Office made the sentencing memorandum public;

IT IS on this 4th day of February, 1998,

**ORDERED** that the sentencing memorandum in this matter be stricken; and it is

**FURTHER ORDERED** that the AUSA and any other AUSA who had contact with third parties, including but not limited to members of the news media and persons engaged in lottery regulation in the various states, regarding the information in the memorandum or any other confidential information to provide to this Court an affidavit under oath and under seal with respect to the recipients of any information, any letters accompanying the information, and the substance of the information provided, whether oral or written; and it is

**FURTHER ORDERED** that the United States Attorney's Office be and is hereby enjoined from disseminating any grand jury material in this case in the future without the express permission of this Court; and it is

**FURTHER ORDERED** that if the United States Attorney's Office finds it necessary to include grand jury material in the sentencing memorandum, application shall be made to this Court for a determination as to the material's applicability to sentencing as required by Rule 6; and it is

**FURTHER ORDERED** that the United States Attorney's Office issue a letter of apology—to be approved by this Court—to both GTECH and the unnamed individual for its wrongful disclosure of the 6(e) material, with such letter to be posted on the Internet web site maintained by the United States Attorney's Office; and it is

**FURTHER ORDERED** that the United States Attorney's Office shall send a letter to all of those individuals or organizations to whom a copy of the memorandum was pro-

vided, including but not limited to the state lottery regulators to whom the memorandum was sent, which letter shall inform the recipient that the United States Attorney's Office violated Rule 6(e) and that the information provided to the recipient was confidential and should not have been so revealed.